Pierce, to use, *v.* Kaseman, Appellant.

Argued April 12, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Charles Lex Smyth,* with him *William H. Satter-thwaite, Jr.,* and *Seymour M. Heilbron,* for appellant.

*Isaac J. Vanartsdalen,* with him *Edward G. Biester,* for appellee.

OPINION BY MR. JUSTICE DREW, May 17, 1937:

Emily V. Kaseman issued execution in Bucks County on the transcript of a judgment for $6,000 recovered in Philadelphia County against Edgar T. Snipes. Snipes petitioned in the Bucks County Court of Common Pleas for a stay of execution and allowance to set off a judgment taken by confession against Mrs. Kaseman in Bucks County on a judgment note for $8,800. Thereafter, Mrs. Kaseman petitioned for a rule to open the judgment Snipes was attempting to set off, on the ground that the note on which it was entered was a forgery and that there was no consideration for it. Testimony and depositions were taken. Later Mrs. Kaseman filed a supplementary answer to the petition to set off averring that the consideration for the note had failed. A replication denied this averment. The rule

to open was discharged, and the set-off was allowed. This appeal followed.

The $6,000 judgment held by Mrs. Kaseman against Mr. Snipes was recovered by her against him for negligently advising her to satisfy a mortgage given her by Eastern University to secure an annuity it owed her.

The $8,800 judgment, the subject of the set-off, was assigned to Snipes by John Thomas Pierce. The stated consideration for the assignment from Pierce to Snipes was a property owned by Snipes in Bucks County. Pierce got the note from Mrs. Kaseman as the price of two properties alleged to have been conveyed to her by him. Mrs. Kaseman in her testimony denied signing the $8,800 note, denied receipt of deeds, denied ever having seen Pierce, or Prince, the witness on the note, and charged that the note was forged for the very purpose of providing a set-off against her judgment against Snipes. In positive contradiction of her unsupported testimony, five disinterested persons, including Prince, testified they either saw her sign the note or heard her say that she had signed it. The handwriting on the note was compared with her admitted signature and was found to be similar. That she received a deed of conveyance from Pierce was testified by the stenographer who typed it and witnessed its execution.

Mr. Snipes testified that he had nothing to do with the transaction between Pierce and Mrs. Kaseman, and knew nothing of it until she came to him and asked him to take the note from Pierce who wanted the Bucks County property owned by Snipes. Snipes' former secretary, now employed elsewhere, corroborated his testimony as to Mrs. Kaseman's request and stated that this visit took place on June 2, 1930. The note is dated May 28, 1930. Snipes did in fact convey the Bucks County place to Pierce on June 3, 1930, but got it back in October, 1930. His wife paid for the reconveyance with bonds, the list of which was produced. Hence it is improbable that his conveyance was a colorable transac-

tion to provide consideration for the acquisition of the note in anticipation of Mrs. Kaseman's judgment, suit for which was not brought until three years later.

After all the testimony was taken Mrs. Kaseman filed a supplemental answer to Mr. Snipes' petition to set off his judgment in which she took an entirely new tack. She averred that Snipes had induced her to take the conveyance of one of the properties from Pierce, knowing but concealing that it was encumbered to its full worth, and that Pierce held title merely as straw man for one of Snipes' clients. Snipes replied to this supplemental answer, denying that he had anything to do with or even knew beforehand of Mrs. Kaseman's transaction with Pierce, and averring further that he, Snipes, had nothing to do with the property after February, 1929, when Pierce took title absolutely and in his own right as per written agreement with Snipes' client, that this property has value in excess of its encumbrance, and that it was not the sole consideration for the note.

The court which heard the testimony on the rule to open the $8,800 judgment found the note on which it was based valid in all respects challenged, and that Mrs. Kaseman's testimony was "false and reckless, utterly incredible and worthless." The rule to open was a matter addressed to the sound discretion of the court below, to be reëxamined on appeal only for abuse: *Rambo Building and Loan Association v. Dragone*, 311 Pa. 422.

We can find no abuse in this case. Here the petitioner's averment of forgery was supported only by her denial that she signed the note, not enough to warrant opening the judgment upon it when its genuineness is attested by impartial witnesses: *Mutual Building and Loan Assn. v. Walukiewicz*, 322 Pa. 240. And her allegation of want of consideration was likewise sustained by her denial alone, though attacked by the testimony of several disinterested persons. Indeed, since the note was under seal, want of consideration is no defense, though failure of consideration would be if it

were established that the parties intended a consideration to pass: *Piper v. Queeney,* 282 Pa. 135. But the petitioner could hardly maintain that she had such intent, having adopted the theory that she executed no note at all.

It is true, in her supplementary answer to Snipes' petition to set off, filed after the testimony on the rule to open was taken, she did advance the claim of failure of consideration known to him when he took the note. If these averments may be considered at all on the rule to open it need only be said that no testimony was offered in support of them and they were denied and explained in Snipes' replication. A mere conflict of oaths does not warrant opening a judgment: *Mielcuszny v. Rosol,* 317 Pa. 91.

The allowance of the set-off was also correct. This is an inherent power of the courts, regulated by equitable principles. It is fundamental that "each case is to be determined on its own circumstances and merits viewed with the eyes of a chancellor in equity": *Leitz v. Hohman,* 207 Pa. 289, 292. Although one judgment is in tort and the other in contract, set-off may still be allowed, and where the tort is one of negligence, as here, and does not involve the element of wilful injury, allowance is the general rule: *Leitz v. Hohman,* supra. As additional reason for the allowance it was shown that Mrs. Kaseman was insolvent, at least in the sense that she could not pay her debts.

Nor does it matter that the judgment against which the other is to be set off has been transferred from another county: see *Best v. Lawson,* 1 Miles (Pa.) 11; *Reed v. Smith,* 158 Fed. 889. Set-off is but a form of satisfaction; satisfaction of judgments, as distinguished from questions of their validity, is within the control of the court of the county to which the judgment has been transferred: *Shotts and Co. v. Agnew,* 81 Pa. Superior Ct. 458.

The court's disposition of both rules was entirely proper.

Decree affirmed.